IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MARGARET FISHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-4092-CV-C-NKL |
| ) | |
| CLARENDON NATIONAL INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Margaret Fisher originally sued Defendant Clarendon National Insurance Company (Clarendon) in Missouri state court for reimbursement of Medicare's payment of her medical bills and expenses under 42 U.S.C. § 1395y, otherwise known as the Medicare Secondary Payer Statute (MSP). Clarendon subsequently removed the case and now moves to dismiss [Doc. # 24], arguing Fisher does not have standing to sue under the MSP statute until there has been a determination of her Missouri workers compensation claim. Fisher responds that under section 1395y, she may show Clarendon's responsibility for such payment "by other means," not just a judgment. This Court now grants Clarendon's motion to dismiss.

**I.     Background**

Fisher, a Massachusetts resident, was employed as a long-haul truck driver by New Prime, Inc., when allegedly she was injured in an accident in Dallas, Texas, on November

1

23, 2001. New Prime—a Nebraska corporation with its principal place of business in Springfield, Missouri—purchased its workers compensation liability insurance from Defendant Clarendon. Currently, there is a workers compensation claim pending before the Missouri Labor and Industrial Relations Commission (LIRC). As of now, Clarendon refuses to reimburse Medicare for Fisher's medical expenses. Fisher asserts this refusal to pay breaches "the terms of the workers' compensation policy." *See* Pl. Sugg. in Opp. at 2.

**II.     Discussion**

In reviewing a Rule 12(b)(6) motion to dismiss, the Court must view the allegations in the light most favorable to the Fisher. *See Kottschade v. City of Rochester*, 319 F.3d 1038, 1040 (8th Cir. 2003). The Supreme Court recently revised the motion to dismiss standard, explaining a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). This does not require heightened fact pleading, but plaintiffs must allege enough facts to "nudge[] their claims across the line from conceivable to plausible." *Id.*; *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" (quoting *Bell Atl. Corp.*, 127 S. Ct. at 1965)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Crop.*, 127 S. Ct. at 1969.

In her petition, Fisher argues that Clarendon was liable for the medical costs

2

Case 2:07-cv-04092-NKL    Document 39    Filed 01/18/08    Page 2 of 7

associated with her injuries under § 287.300, RSMo, otherwise known as the Missouri Workers Compensation Statute. *See* First Amended Pet. ¶ 12. As a result, Fisher explains that Clarendon must repay Medicare for her medical expenses under 42 U.S.C. § 1395y, which states in part:

> A primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any such payment made by the Secretary under this subchapter with respect to an item or service **if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service**. A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver or release (whether or not there is a determination or admission of liability) of payment for items or services included in the claim against the primary plan or the primary plan's insured, or by other means.

42 U.S.C. § 1395y(b)(2)(B)(ii) (emphasis added). The MSP statute creates a private right of action for double damages when a primary plan fails to provide primary payment or appropriate reimbursement. *See id.* § 1395y(b)(3)(A).

Clarendon argues that under the MSP statute, there is no private right of action until liability has been determined, primarily relying on *Glover v. Philip Morris USA*, 380 F. Supp. 2d 1279 (M.D. Fla. 2005), and *Graham v. Farm Bureau Insurance Co.*, No. 07-0241, 2007 WL 891895 (W.D. Mich. Mar. 21, 2007). "Considering the provisions of the MSP together, there are three elements of the MSP's private cause of action: (1) a primary plan, (2) that is responsible to pay for an item or service, and (3) that failed to make the appropriate payment to Medicare for the item or service." *Glover*, 380 F. Supp. 2d at 1290. Regarding the second element, "Section 1395y(b)(2)(B)(ii), as amended by the MMA,

3

requires a primary plan to reimburse Medicare 'if it is demonstrated' that the primary plan 'has or had a responsibility' to make payment for an item or service." *Id.*

Fisher responds that this case is different than *Glover* and *Graham* because those cases involved tort actions, whereas this is an action upon an insurance contract. Because she had a contractual relationship with Clarendon, Fisher argues, she can demonstrate Clarendon's responsibility to pay "by other means." However, the *Glover* court's analysis of the "by other means" clause is much broader than just the tort context: "The 'by other means' language in section 1395y(b)(2)(B)(ii) encompasses other instances of 'like kind' where there is a previously established requirement or agreement to pay for medical services for which Medicare is entitled to be reimbursed, which instances Congress chose not to try to exhaustively enumerate." *See id.* at 1291.

Still, Fisher argues that Clarendon, through its insurance policy, agreed to cover her health care costs. *See id.* at 1294 ("A group health plan, unlike an alleged tortfeasor, has agreed *ab initio* to cover the beneficiary's health care costs. Thus, there is a difference, based on the language of the amended MSP, between a self-insured alleged tortfeasor and a preexisting group health care plan that agrees to provide primary health care coverage for a beneficiary."). But, Fisher did not have a group health plan; instead she was covered by a workers compensation insurance plan. In Missouri, under section 287.120, RSMo, "workers' compensation is the exclusive remedy for an employee's accidental death or injury arising out of and in the course of his employment." *State ex rel. Ford Motor Co. v. Nixon*, 219 S.W.3d 846, 849 (Mo. App. 2007). As a result, the LIRC has exclusive jurisdiction over

4

claims covered by the workers compensation act. *See State ex rel. Tri-County Elec. Co-op Ass'n v. Dial*, 192 S.W.3d 708, 710 (Mo. 2006); *see also State ex rel. Ford*, 219 S.W.3d at 849 ("The Commission has exclusive and original jurisdiction over claims for injuries covered by the Workers' Compensation Law." (citing *State ex rel. FAG Bearings Corp. v. Perigo*, 8 S.W.3d 118, 121 (Mo. App. 1999)). This includes original jurisdiction to determine the fact issues establishing the LIRC's jurisdiction. *See State ex rel. Ford*, 219 S.W.3d at 849.

Fisher basically admits in her briefing that the question of whether Clarendon owes money under the policy is determined by whether the injuries arose out of and in the course of her employment with New Prime. In her Suggestions in Opposition, Fisher states:

> However, what we have here is an insurance company that insures Fisher **for injuries that she suffers out of and in the course of her employment**. Missouri expressly provides that the insurer is primarily liable. *Section 287.300 RSMo 2000*. Her allegations in the First Amended Petition clearly set forth her claim that **she suffered her injuries arising out of and in the course of her employment**. . . . A defendant insurer who clearly and uncontrovertably issues a policy to cover **injuries that arise out of and in the course of employment** should not be permitted to cost shift medical expenses to Medicare when the injuries are clearly work related and fall within the scope of the policy.

Pl. Sugg. in Opp. at 7-8 (emphasis in bold added). This Court cannot establish Clarendon's liability under the policy without first determining whether Fisher's injuries arose out of and in the course of her employment. However, that determination is solely within the exclusive and original jurisdiction of the LIRC, where Fisher currently has a workers' compensation claim pending. Fisher may not avoid the LIRC's exclusive jurisdiction by framing her cause

5

of action as a Medicare reimbursement claim.

Until the LIRC makes its determination, Fisher cannot show that Clarendon had an existing responsibility under section 1395y(b)(2)(B)(ii) to make payment for an item or service. *See O'Connor v. Mayor & City Council of Baltimore*, 494 F. Supp. 2d 372, 373 (D. Md. 2007) (noting Maryland Workers' Compensation Commission found plaintiff's mesothelioma resulted from his employment and had ordered city to pay his related medical bills, but city failed to fulfill its obligation). This Court is without jurisdiction to decide the factual issue of whether Fisher's injuries arose out of and in the course of her employment. Because Fisher cannot demonstrate that Clarendon had a responsibility to pay for her medical services under the workers compensation insurance policy, she has failed to state a claim for relief under section 1395y.

## III.   Conclusion

Accordingly, it is hereby

6

ORDERED that Defendant Clarendon National Insurance Company's Motion to Dismiss [Doc. # 24] is GRANTED.

       s/ NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated: January 18, 2008
Jefferson City, Missouri